State
vs.                    } Ind. No. 14411
Arthur E. Lepper, alias

### February 25, 1928.

HAHN, J. After a verdict of guilty of murder in the first degree, heard on defendant's motion for a new trial based upon the grounds that the verdict is against the law and the evidence and the weight thereof. The ground of newly discovered evidence set forth in the motion was not pressed at the hearing.

Early in the morning of March 14, 1926, Hugh Manning, a laborer living in a small house facing St. James

Street in Cranston, found the body of a man, who apparently had been murdered, lying beside a Ford automobile. He went to the house of a neighbor and telephoned to the police, who immediately came to the scene and found that the body was that of Harold E. Hillman of Cranston, the manager of a Mayflower store on Park Avenue in said Cranston. Subsequent investigation showed that Hillman had been murdered and robbed. After a thorough consideration of all the circumstances, the police were unable to discover the perpetrator of the crime and so the matter rested until the latter part of September, 1927, when the defendant Lepper, formerly residing in Rhode Island and employed in Cranston, being a prisoner in the York County Jail at York, Pennsylvania, asked for an interview with the warden of the jail, one Charles P. Gerber. In this interview the defendant admitted killing and robbing Hillman and stated the circumstances. After communication between the warden and the Attorney General of the State of Rhode Island, on December 16, 1927, Inspector Miller of the Cranston Police and Investigator D'Avila of said Attorney General's department went to York, Pa., and in the presence of these men, Warden Gerber, and a notary, the defendant signed and swore to a confession, which is marked State's Exhibit 15. The truth of this confession was afterwards reaffirmed by the defendant before a Judge of the Court at York, Pa., and authority was then given for his removal to Rhode Island. On December 18, 1927, Lepper was brought to the City Hall in Cranston, where he repeated the substance of this confession in greater detail to various people there present, among them being the Attorney General of Rhode Island. He was asked if he was willing to go over the course taken by him on the night of the murder and, of his own volition, in an automobile with the police officers and others, followed by the Ford automobile which belonged to Hillman and beside which his body was found, according to the evidence, he directed the officers to all of the places, including the spot at which the body was found, and in great detail explained how he entered the Ford automobile previous to Mr. Hillman and waited for an opportune time to strike him, and later murdered him, also relating the details of the shooting of Hillman and what he did with the money which he obtained through the commission of the crime. After this explanation to the officers, he returned to the City Hall in Cranston and a further statement was taken from him by the Chief of Police of Cranston (Marked State's Exhibit 19). After the statement was prepared (Unsigned Statement Dec. 18, 1927), he conferred with counsel and refused to sign same. His claim upon the witness stand was that while he had admitted committing the offence, his admission was not true but was for the purpose of relieving himself from very burdensome imprisonment in Pennsylvania, whereby he was kept without working and would have done anything to escape from it. The reason given for his knowledge of many of the facts in the case was that they were matters of great notoriety set out in the public press and he knew about them as he was employed in Cranston at the time.

A careful consideration of all of the evidence in relation to statements and confessions leads rather conclusively to the fact that the confessions were voluntary, and the jury was called upon to pass on the question of whether they were voluntary before considering whether they were true. A number of incidents testified to during the trial tended to establish the truth of the confessions. There is evidence in relation to the broken handle on the door of Hillman's Ford automobile, it being testified to by various witnesses

that upon examining the automobile in the rear of the Cranston City Hall immediately upon his return from Pennsylvania, defendant, examining one of the handles on the door, said, "this handle wasn't broken then", meaning at the time of the murder. Again, during one portion of the questioning of the defendant, he referred to a hat (State's Exhibit No. 12), which the deceased Hillman had worn and stated that it was somewhat darker than the hat of Mr. D'Avila (State's Exhibit No. 20), which was on a desk or table in the City Hall. Again, there is confirmatory evidence regarding the barking of a dog in the statement that he stopped at a certain place and that because of this barking of a dog he moved to another location, and also of a swampy piece of land at the rear of the houses facing upon St. James Street on which the murder was committed; that he started to go through this section after the murder but was unable to do so because of the swampy nature of the land. His suggestion as to the location of Hillman's automobile across from the Mayflower store and directing of the officers over the scene of the killing, as well as the road used by him, all, in a way, confirm the truth of the confessions, and the above statements, together with the placing by defendant of the automobile in substantially the same position in which it was located when the body of Hillman was discovered, are all matters which it would be difficult to consider that defendant could have known except from actual personal knowledge of the conditions, for none of them would have been of sufficient importance to have been matters of public notoriety.

The question of whether the confessions and statements were voluntary was presented to the jury with instructions to disregard them if they were improperly obtained under the rules set forth in the decisions of our Supreme Court, but in view of the fact that the defendant admitted having made statements acknowledging guilt for a purpose, it would seem they were not alone voluntary but were freely offered for his own benefit. His testimony in regard to the York County confession is as follows: "Q. You talked with these fellows?" (Referring to fellow prisoners in the hospital ward.) "A. Yes. Q. As a result of that conversation did you do anything? A. Yes. Made up a fish story about killing Hillman. Q. The reason you signed the paper?" (Referring to confession at York jail) "A. Was to get home." There is no evidence that he was abused, threatened, promised any reward, or in any manner put in a position where through fear, or hope of reward, he should tell an untruth. His testimony upon the witness stand was unconvincing and no real effort was made to explain those things which if defendant were innocent might have been explained.

The jury considered the case carefully; they were kept together, and after deliberation reported a verdict of guilty of murder in the first degree. This verdict is supported by ample evidence and is neither against the law, nor the evidence, nor the weight thereof.

Motion for new trial denied.

For state: Chas. P. Sisson, Attorney-General.

For defendant: Thomas H. Gardiner.